Filed 5/31/13 P. v. Hightower CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C070121 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F03192) |
| v. | |
| VALENTINO HIGHTOWER et al., | |
| Defendants and Appellants. | |

A jury found codefendants Valentino Hightower and Anthony Edwards guilty of two counts of robbery, and sustained various firearm enhancements as to both counts. The trial court sentenced them to state prison.

Both defendants challenge the extent of the trial court's inquiry into whether the misconduct of a dismissed juror potentially affected any of the remaining jurors. We shall affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The nature of defendants' argument does not implicate the facts underlying the conviction, nor are we required to determine whether any error was prejudicial. We therefore omit the circumstances of the crimes.

On the second day of trial (after completing the selection and swearing of the jury), the court received a note from the bailiff. An excused juror (who was apparently part of a group of seven people excused for hardship before voir dire of the panel commenced) had told the bailiff she heard a woman—who had been attending to the child of defendant Edwards— instructing the child to smile in the presence of the jurors. The prosecutor then mentioned that she had seen an excused juror ("7818") speaking to the second alternate juror ("0750"). The excused juror asked whether the alternate was going to tell about something that sounded like "smell." The alternate then spoke with seated Juror No. 8 ("7187"), but the prosecutor could not hear the conversation. In light of this mention of a directive to smile, the prosecutor thought the word she heard might have been "smile" rather than "smell," so the prosecutor wanted to question the second alternate juror and Juror No. 8 to determine if this was the subject of the excused juror's conversation. When questioned, neither the alternate juror nor Juror No. 8 was aware of any information about individuals related to the case doing anything.

After the lunch break, the court reported that an excused juror ("3778") had called to report improper comments that seated Juror No. 1 ("7392") had made. The excused juror testified that she had been sitting at a table with Juror No. 1, who said something not "overtly racist" but which "made light of [defendants'] skin color, that they [a]re Black," and that because they were sitting in a courtroom they must be guilty.[1] It sounded to the excused juror as if Juror No. 1 had prejudged the case. A juror from a

---

[1] The desultory voir dire of Juror No. 1 did not give any indication of bias or prejudgment.

different department joined them, at which point Juror No. 1 reiterated that if the defendants were in court, "there must be some compelling evidence why we are here." There was another person seated near them who was working on a laptop, and the excused juror did not believe this person could have overheard the conversation.

Before the prosecutor would stipulate to the replacement of Juror No. 1, she wanted to find out if the juror had similar conversations with any of the other seated jurors. The prosecutor had seen Juror No. 1 talking frequently with Juror No. 8. When questioned, Juror No. 1 denied having *any* discussions about the case with anyone else in the jury panel, nor did she overhear any. The People then stipulated to replacing Juror No. 1 with the first alternate ("0878"), and the court dismissed Juror No. 1. (Later in the trial, Juror No. 8 was dismissed for medical reasons before deliberations and replaced with the second alternate.)

**DISCUSSION**

After discussing at length the unquestioned premise that the trial court had proper cause to excuse Juror No. 1, defendants both assert the trial court was aware of facts that suggested a likelihood that Juror No. 1 tainted *other* members of the jury with improper biases and therefore breached its duty to investigate sua sponte (or trial counsel were ineffective for failing to request the court to undertake an investigation). (*People v. Fuiava* (2012) 53 Cal.4th 622, 702-703 (*Fuiava*).) They contend a presumption of prejudice arises as a result and we must reverse the judgment because the People cannot rebut it. (*People v. Tafoya* (2007) 42 Cal.4th 147, 192-193.)

This argument is based on speculation. The evidence shows only that Juror No. 1 shared her biases with people who were *not* members of her jury. There is an absence of any evidence that she spoke on the same topic with Juror No. 8 or anyone else on the jury *in this case*. (*Fuiava*, *supra*, 53 Cal.4th at p. 702 [no *evidence* that anyone other than excused juror had seen purported spectator misconduct, or that it had unsettled them as

3

well]; *People v. Martinez* (2010) 47 Cal.4th 911, 943 [must be evidence of bias; court will not presume its existence].) The trial court (and trial counsel) could reasonably conclude that had Juror No. 1 spoken in this fashion to anyone else on the jury, the jurors or alternates would have reported it as promptly as excused juror 3778 had reported it (particularly as Juror No. 8 earlier had the opportunity to mention anything of the sort happening when called into the courtroom), and questioning the jurors about anyone expressing bias would simply poison an otherwise untainted well.**2** As in *Fuiava*, defense counsel's acquiescence in failing to investigate the matter further supports our conclusion that there was a lack of cause for additional investigation. (*Fuiava*, *supra*, 53 Cal.4th at p. 703.) While defendants contrast what they characterize as the greater lengths on the part of the trial court in investigating the other matter (which in fact amounted to a single question of the second alternate and Juror No. 8), this is attributable to the need to determine if the report to the bailiff was connected at all with what the prosecutor *in fact* overheard; it was not a matter of pure speculation.

To the extent any presumption of prejudice arose, it was limited to Juror No. 1 herself, whom the trial court replaced, thus dispelling any prejudice. (Juror No. 8, as noted, also was not part of the jury's deliberations.) We therefore do not have any basis for finding the pattern admonition (that the jury "must not be biased against a defendant just because they have been [*sic*] arrested, charged with a crime, or brought to trial") and the pattern instruction (on the presumption of innocence) were ineffective.

---

**2** Moreover, for purposes of direct appeal we can posit that defense counsel might not have wanted to disrupt what they perceived as a favorably composed jury.

4

## DISPOSITION

The judgments are affirmed.


                                                         BUTZ             , J.


We concur:


_____BLEASE_____, Acting P. J.


_____MAURO_____, J.